IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| GIOVANNI LEANDRY-MORALES,<br><br>Plaintiff,<br><br>vs.<br><br>DEPARTMENT OF CORRECTIONS,<br>LIEUTENANT MCSHANE,<br>SERGEANT WOOLDRIDGE,<br><br>Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:25-CV-266-CCW-CBB<br><br>United States District Judge<br>Christy Criswell Wiegand<br><br>United States Magistrate Judge<br>Christopher B. Brown |

**REPORT AND RECOMMENDATION**
**ON DEFENDANTS' PARTIAL MOTION TO DISMISS, ECF No. 38**[1]

**Christopher B. Brown, United States Magistrate Judge**

## I. Recommendation

Plaintiff Giovanni Leandry-Morales, proceeding pro se and in forma pauperis, initiated this civil action under 42 U.S.C. § 1983. Plaintiff alleges the Department of Corrections and two correctional officers McShane and Woodridge, violated his Constitutional rights during a serious of events where they confiscated his Quran, threatened him with weapons, confiscated his clothes and bedding, and twice sprayed him with OC spray despite knowing he was asthmatic and had one lung. ECF No. 37. Plaintiff brings: an Eighth Amendment excessive force claim (Count I),

---

1 This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).

an assault and battery claim (Count II), a First Amendment retaliation claim (Count III), a civil conspiracy claim (Count IV), and an Americans with Disabilities Act ("ADA") claim (Count V). *Id.* The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

Defendants have now filed a Partial Motion to Dismiss any official capacity claims, as well as Plaintiff's retaliation, conspiracy, and ADA claims. ECF No. 38. The Partial Motion to Dismiss is fully briefed and ripe for consideration. ECF Nos. 38-39, 45. As set forth below, it is respectfully recommended that the Partial Motion to Dismiss be granted or denied as follows:

- GRANTED as to all claims brought against Defendants in their official capacities;
- DENIED as to the First Amendment Retaliation claim against Defendants Woodridge and McShane;
- GRANTED without prejudice as to the civil conspiracy claim, and with leave to amend if Leandry-Morales can do so in good faith;
- GRANTED without prejudice as to the ADA claim, and with leave to amend if Leandry-Morales can do so in good faith.

## II. Report

### a. Factual Background

The following allegations in the Complaint are accepted as true with all reasonable inferences drawn in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 237 (3d Cir. 2008).

Leandry-Morales' alleges that on December 16, 2024, Defendant Woodridge directed a subordinate to confiscate his Quran. ECF No. 37 at ¶ 6. Plaintiff then

told McShane about the confiscation, saying that Woodridge confiscated the Quran because he does not like Plaintiff. *Id.* at ¶ 7. McShane told Plaintiff he would look into the matter and then walked away with Woodridge. *Id.* at ¶ 8.

McShane then told Plaintiff he would give him the Quran back in exchange for the confiscation slip. *Id.* at ¶ 9. Plaintiff refused and said he was going to keep the confiscation slip as evidence towards Defendant Woodridge in a grievance he planned to file against him for "antagonizing and oppressing him." *Id.* at ¶ 10. McShane then told Plaintiff that if he wanted to use the grievance process then he would get his Quran back. *Id.* at ¶ 11.

According to the Amended Complaint, Woodridge and McShane then went to the armory and got a shield, a baton, and canisters of OC spray "with the intent to use force upon Plaintiff in retaliation of him intending to file a grievance against Woodridge." *Id.* at ¶ 12. With "their weapons" they "antagonized and oppressed" Plaintiff by making him strip out of his clothes for a search, and then confiscated his property including his clothes and bedding. *Id.* at ¶ 14. Plaintiff alleges this occurred on a particularly cold day and being without clothing or bedding caused him "unnecessary and wanton pain and discomfort." *Id.* at ¶ 15.

Plaintiff further alleges that Defendants Woodridge and McShane threatened him with the weapons, and twice sprayed OC spray directly in his face – after Plaintiff told them he had only one lung and was asthmatic, so the OC spray could kill him. *Id.* at ¶¶ 16-20. After being given medical care, Woodridge and McShane "forced" Plaintiff into an observation cell without his clothing, bedding, or property

despite the "extreme cold temperatures." *Id.* at ¶¶ 22-23. Plaintiff alleges he defecated "blood from swallowing of the OC spray" and had to be prescribed an antibiotic. *Id.* at ¶ 24.

### a. Standard of Review - Motion to Dismiss for Failure to State a Claim (Fed. R. Civ. P. 12(b)(6))

A Fed. R. Civ. P. 12(b)(6) motion challenges whether the complaint states an actual claim. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and can be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A defendant has the burden to show a complaint fails to state a claim. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must be dismissed if it merely alleges entitlement to relief without supporting facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.'" *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), nor a plaintiff's "bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902,

906 (3d Cir. 1997). The court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims – not if they will ultimately prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds).

**b. Discussion**

In their motion, Defendants move to dismiss any official capacity claims, as well as Plaintiff's retaliation, conspiracy, and ADA claims. ECF No. 38. Each argument is addressed in turn.

**a. Official Capacity Claims – Eleventh Amendment Immunity**

To the extent Leandry-Morales is bringing any claims against Defendants in their official capacity, Defendants move to dismiss on the basis of immunity. ECF No. 39 at 4-5. Defendants argue they are immune from any claims brought against them in their official capacity under the Eleventh Amendment. *Id.* Leandry-Morales opposes the Motion to Dismiss, but only generally, and suggests the Complaint has pled enough facts to survive at this stage. *See* ECF No. 45 at 2-3.

Defendants are correct that they are entitled to Eleventh Amendment Immunity to the extent that Leandry-Morales is bringing any claims against them in their official capacity. The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. Because a lawsuit against state officials acting in their official capacities are suits against the employing state agency, such suits are barred by the Eleventh Amendment. *Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) (state agencies); *Edelman*

*v. Jordan*, 415 U.S. 651 (1974) (state employees acting in their official capacity).

Specifically,

> [b]ecause the Commonwealth of Pennsylvania's Department of Corrections is part of the executive department of the Commonwealth, *see* Pa.Stat.Ann., tit. 71, § 61, it shares in the Commonwealth's Eleventh Amendment immunity. Such immunity, however, may be lost in one of two ways: (1) if the Commonwealth waived its immunity; or (2) if Congress abrogated the States' immunity pursuant to a valid exercise of its power.

*Lavia v. Pennsylvania, Dept. of Corrections*, 224 F.3d 190, 195 (3d Cir. 2000). Congress has not expressly abrogated this constitutional immunity for civil rights lawsuits against the Pennsylvania Department of Corrections and Pennsylvania has not waived its immunity. *Id*. Pennsylvania instead enacted a statute invoking its Eleventh Amendment immunity. *See* 42 Pa.C.S.A. § 8521(b). This is fatal to Leandry-Morales' claims against the Defendants in their official capacities for damages and, as a result, Defendants are immune from any claims made against them in their official capacities.

Therefore, it is respectfully recommended that Defendants' Partial Motion to Dismiss be GRANTED as to all official capacity claims.

**b. First Amendment Retaliation**

Defendants next move to dismiss Leandry-Morales' First Amendment Retaliation claims against Defendants Woodridge and McShane. ECF No. 39 at 6. Defendants argue Leandry-Morales has not alleged that he engaged in constitutionally protected activity or an adverse action, nor that there is any causal connection. ECF No. 39 at 6-11. Again, Leandry-Morales opposes this only in general terms. *See* ECF No. 45 at 2-3.

In the Amended Complaint, Plaintiff alleges these Defendants retaliated against him for intending to file a grievance against Woodridge by getting a shield, metal baton, and OC spray "with the intent to inflict serious bodily harm" on him. ECF No. 37 at ¶¶ 12, 35. He alleges they made him strip out of his clothes for a search and confiscated his clothes and bedding. *Id.* at ¶ 14. It was a particularly cold day, so this caused him "unnecessary and wanton pain and discomfort." *Id.* at ¶ 15. He also alleges they threatened him with the weapons, and twice sprayed OC spray directly in his face – after Plaintiff told them he had only one lung and was asthmatic, so the OC spray could kill him. *Id.* at ¶¶ 16-20. After being given medical care, Woodridge and McShane "forced" him into an observation cell without his clothing, bedding, or property despite the "extreme cold temperatures." *Id.* at ¶¶ 22-23. He defecated blood from swallowing the OC spray and had to be prescribed an antibiotic. *Id.* at ¶ 24.

To bring a retaliation claim, an incarcerated plaintiff must show "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

Defendants first argue that Plaintiff has not shown a constitutionally protected conduct because he did not file a grievance against either Defendant. ECF No. 39 at 8. They also argue that a "cell search" and being asked to strip is not

a sufficient adverse action. *Id.* at 9. Finally, Defendants argue there is no causation. *Id.* at 9-11.

As to the first element, it is well-settled that filing a grievance is constitutionally protected conduct. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (grievance). However, merely threatening to file a grievance is not constitutionally protected activity. *See Bendy v. Hutler*, 2007 WL 87632, at *2 (D.N.J. Jan. 9, 2007), *aff'd sub nom. Bendy v. Ocean Cnty. Jail*, 341 F. App'x 799 (3d Cir. 2009) (granting defendants' motion to dismiss First Amendment retaliation claim where plaintiff "failed to allege ... that he actually filed a grievance against" defendant and therefore did not engage in constitutionally protected activity).

The inquiry does not, however, end there. In *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016), the Third Circuit Court of Appeals considered a similar situation where "the allegedly retaliatory conduct occurred before [the plaintiff] filed his grievance." The Court concluded that chronology does not necessarily defeat the "retaliation claim because [the plaintiff] informed prison officials of his intent to file a grievance and requested an appropriate form ... before any misconduct was filed against him." *Id.* at 422-23. The Court pointed out that "[f]or purposes of [the plaintiff's] retaliation claim, we cannot discern a substantive distinction between retaliation for informing prison officials of an intent to file a grievance or requesting the necessary forms to do so on the one hand, and actually filing such a grievance on the other." *Id.* at 423.

Here, Leandry-Morales not only told McShane he was going to file a grievance, he specifically told him he would not return the confiscation slip because he was going to use it in his grievance against Defendant Woodridge. ECF No. 37 at ¶ 10. The Court finds that explicitly telling a Defendant about collecting specific evidence for a grievance and then threatening to file a grievance is a concrete step towards filing a grievance akin to "requesting the necessary forms" in *Watson*. *See also Nestor v. Allegheny Cnty. Pennsylvania,* No. 2:23-CV-807-MRH-CBB, 2025 WL 849459, at *4 (W.D. Pa. Jan. 16, 2025) (finding "request to speak to a supervisor and threat to file a lawsuit" adequate for first element of retaliation claim at Motion to Dismiss stage), *report and recommendation adopted*, No. 2:23-CV-807, ECF No. 41 (W.D. Pa. Jan. 31, 2025). Therefore, at this stage in the proceeding, Plaintiff has sufficiently alleged the first element of a retaliation claim.

Next, Plaintiff has clearly alleged an adverse action sufficient to satisfy the second element of retaliation. Plaintiff alleges Defendants Woodridge and McShane threatened him with weapons, confiscated his clothes and bedding during an extremely cold season "for several days," and twice sprayed him with OC spray to the point where he defecated blood and had to be prescribed an antibiotic. ECF No. 37 at ¶¶ 12-24. *Jackson v. O'Brien*, No. 1:18-00032, 2021 WL 3174687, at *3 (W.D. Pa. July 27, 2021) ("threats of violence do constitute an adverse action for retaliation"); *Hill v. Harry,* No. 3:24-CV-01393, 2025 WL 1238368, at *7 (M.D. Pa. Apr. 29, 2025) (confiscated clothing and bedsheets for a period of time can support an inference of adverse action)*; Parker v. Kyper,* 2024 WL 264677, at *4 (M.D. Pa.

2024) (holding that "the act of spraying a person with OC spray is substantially more than a de minimis action or consequence"). Discovery will reveal just how long Plaintiff went without bedding and clothing. But at this stage, Plaintiff has sufficiently alleged adverse actions.

Finally, Plaintiff alleged the third element of causal connection. He alleges that right after he told McShane he was going to use the confiscation slip as evidence in a grievance against Woodridge, McShane and Woodridge returned with weapons and OC spray. ECF No. ¶¶ 10-12. An "unusually suggestive temporal proximity" between the protected activity and the adverse action can demonstrate the causal connection. *Watson*, 834 F.3d at 424.

Defendant argues that Plaintiff has not alleged a causal connection as to Defendant Woodridge because he "merely speculates to Defendant Woodridge's personal knowledge." ECF No. 39 at 10. Plaintiff, however, alleges that immediately after Plaintiff and McShane discussed his forthcoming grievance against Woodridge, Woodridge himself came back to join in the intimidation with McShane. That is sufficient at this stage to show that Woodridge had some knowledge of Plaintiff's intent to file a grievance – and discovery can reveal what Woodridge actually knew. *See Nestor*, 2025 WL 849459, at *5 (finding that a defendant "who joined the violence immediately and seemingly without question" was sufficient to show temporal proximity at the motion to dismiss stage).

Finally, Defendant argues there is no causal connection with McShane because Plaintiff did not intend to file a grievance against him. ECF No. 39 at 10.

The Court rejects this argument. Accepting the allegations in the Amended Complaint as true and in the light most favorable to Plaintiff, it is clear that Plaintiff is alleging McShane committed the adverse actions because Plaintiff was going to file a grievance against his teammate Woodridge. Plaintiff alleged McShane specifically acknowledged Plaintiff was going to use the grievance process, because he told Plaintiff that if he was going to go the route of filing a grievance, he could not have the Quran. ECF No. 37 at ¶ 11. Additionally, as stated above, Plaintiff alleges McShane returned with weapons shortly after his conversation with Plaintiff. *Id. at* ¶ 12. That is sufficient at this stage in the proceeding. *See Bey v. Holt*, No. 1:23-CV-00328, 2024 WL 1356683, at *6 (M.D. Pa. Mar. 29, 2024) (rejecting argument that a retaliation claim against one defendant cannot be based upon a grievance filed against another because a "Plaintiff need not specifically name each Defendant . . . otherwise, a third party could – essentially – carry out the adverse actions on behalf of those who are named as wrongdoers in a grievance").

Accordingly, as Plaintiff has sufficiently alleged the three elements of a First Amendment retaliation claim against Defendants Woodridge and McShane, it is respectfully recommended that the Motion to Dismiss this claim be DENIED. Any additional open questions can be resolved in discovery.

**c. Civil Conspiracy Claim**

Defendants next move to dismiss Leandry-Morales' civil conspiracy claim at Count IV. ECF No. 39 at 11. Defendants argue that Plaintiff "merely makes a conclusory allegation" about conspiracy but does not sufficiently allege a factual

basis for this claim. *Id.* Again, Leandry-Morales opposes this only in general terms. *See* ECF No. 45 at 2-3.

In the Amended Complaint, Leandry-Morales alleges that Woodridge and McShane "had a meeting of the minds to retaliate and use excessive force" against him when they confiscated his clothes and bedding, threatened him with the weapons, and twice sprayed him with OC spray despite his asthma and one lung. ECF No. 37 at ¶ 36. He does not allege any other joint actions. *Id.*

To show a claim of civil conspiracy under § 1983, a plaintiff must allege (1) two or more persons conspired to deprive him of a constitutional right; (2) one or more of the conspirators performed an overt act in furtherance of the conspiracy; and (3) the overt act injured plaintiff by depriving him of his constitutional right; and (4) the conspirators were acting under color of state law. *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001) (*quoting* 42 U.S.C. § 1983).

For a § 1983 conspiracy claim to survive a motion to dismiss, the plaintiff "must allege specific facts showing an agreement and concerted action amongst the defendants." *Harmon v. Delaware Sec'y of State*, 154 Fed. Appx. 283, 285, n.3 (3d Cir. 2005) (citations omitted). A "mere general allegation" or "averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient" to state a claim for civil conspiracy under § 1983. *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984), *aff'd*, 769 F.2d 152 (3d Cir. 1985). *See also Brown v. Camp Hill,* 2015 WL 5675575, at *5 (M.D. Pa. Sept. 25, 2015) ("A conspiracy claim

requires more than mere speculation as to an agreement. Plaintiff must provide specific allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the challenged conduct.") (internal quotation marks omitted).

Defendants are correct that Leandry-Morales has not alleged facts showing agreement between Defendants Woodridge and McShane. Leandry-Morales has only alleged that they acted together. However, "'the linchpin for conspiracy is agreement,' [and] allegations of parallel or concerted conduct, without more, are insufficient" to state a conspiracy claim. *Mitchell v. Wieland,* No. 1:25-CV-00012-RAL, 2026 WL 1623062, at *6 (W.D. Pa. June 5, 2026) (quoting *Watson v. Sec'y Pa. Dep't of Corr.*, 436 Fed. Appx. 131, 137 (3d Cir. 2011) (per curiam)).

The Amended Complaint does not support a plausible inference that Defendants Woodridge and McShane had an actual agreement to violate his rights. *Contrast Mitchell*, 2026 WL 1623062, at *6 (saying allegations of "coordinated conduct" was not enough to "support a plausible inference of an actual agreement" between the defendants) *with Whetzel v. Mangino,* No. 2:23-CV-01595-CCW, 2024 WL 4266556, at *3 (W.D. Pa. Sept. 23, 2024) (finding understanding between defendants because there was evidence of conversations and military salutes between them).

Accordingly, it is respectfully recommended that the Motion to Dismiss the conspiracy claim be GRANTED. However, it is also respectfully recommended that the dismissal be without prejudice, and that Leandry-Morales be given leave to

amend if he can do so in good faith. *See Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002).

**d. ADA Claim**

Defendants next move to dismiss Leandry-Morales' ADA claim. ECF No. 39 at 12. At Count V, Leandry-Morales alleges that the DOC failed to reasonably accommodate his respiratory disability – asthma and one lung – by failing to prevent its staff from using OC spray on him "despite him having a medical contraindication for its use." ECF No. 37 at ¶ 37. Plaintiff opposes only in broad terms. *See* ECF No. 45 at 2-3. It is respectfully recommended that Defendants' Motion to Dismiss this claim be GRANTED without prejudice and with leave to amend.

Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It is "well established" that "[s]tate prisons fall squarely within the statutory definition of public entity." *Chmiel v. Pennsylvania Dep't of Corr.,* No. CV 18-1691, 2020 WL 1332830, at *8 (W.D. Pa. Mar. 23, 2020) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)).

To state an ADA claim, a plaintiff must show that: (1) they are a qualified individual; (2) with a disability; and (3) they were excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or were

subjected to discrimination by any such entity; (4) by reason of their disability. *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023). *See also Furgess v. Pennsylvania Dep't of Corr.,* 933 F.3d 285, 289 (3d Cir. 2019) (same). Here, Defendants do not dispute that Leandry-Morales is a qualified individual with a disability. Defendants instead argue that he has not alleged any facts showing he was excluded from a program or service, or otherwise discriminated against based on his respiratory disability. ECF No. 39 at 12.

Defendants are correct. Leandry-Morales has not alleged any facts supporting a plausible inference that he was excluded from a program or service, or otherwise discriminated against based on his respiratory disability. *See generally,* ECF No. 37. Courts in this District have rejected nearly identical claims because the plaintiff failed to identify any "service, program, or activity offered by the DOC and for which he was qualified and from which he was excluded." *Barksdale v. Department of Corrections*, 2024 WL 5238210 (W.D. Pa. Dec. 27, 2024) (granting motion for judgment on the pleadings on ADA claim based on staff member's use of OC spray despite knowledge of plaintiff's asthma because plaintiff did not identify program or service); *Mitchell v. Wieland*, No. 1:25-CV-00012-RAL, 2026 WL 1623062, at *6 (W.D. Pa. June 5, 2026) (granting motion to dismiss ADA claim based on use of OC spray against plaintiff with asthma because allegations "do not support a plausible inference that Mitchell was excluded" from a program or service or otherwise discriminated against); *Talbert v. Dep't of Corr.*, No. 1:24-CV-00166-

RAL, 2026 WL 797460, at *5 (W.D. Pa. Mar. 23, 2026) (same, at the summary judgment stage).

As Leandry-Morales has not alleged the elements of an ADA claim, it is respectfully recommended that the Defendant's Motion to Dismiss be GRANTED. It is also respectfully recommended that the dismissal be without prejudice and with leave to amend should Leandry-Morales – in good faith – be able to identify a service, program, or activity that he was excluded from or denied the benefits of based on his disability. *See Grayson,* 293 F.3d at 108 (3d Cir. 2002).

**c. Conclusion**

Based on the above, it is respectfully recommended that that Defendants' Partial Motion to Dismiss be granted or denied as follows:

- GRANTED as to all claims brought against Defendants in their official capacities;
- DENIED as to the First Amendment Retaliation claim against Defendants Woodridge and McShane;
- GRANTED without prejudice as to the civil conspiracy claim, and with leave to amend if Leandry-Morales can do so in good faith;
- GRANTED without prejudice as to the ADA claim, and with leave to amend if Leandry-Morales can do so in good faith.

Any party is permitted to file written specific Objections to this Report and Recommendation to the assigned United States District Judge. In accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b)(2), and LCvR 72.D.2, Leandry-Morales, because he is a non-electronically registered party, must file written objections, if any, to this Report and Recommendation by **August 20, 2026**. Defendants, because

they are electronically registered parties, must file objections, if any, by **August 17, 2026**. Any party opposing the Objections shall have fourteen (14) days from the date of service of the Objections to respond thereto. *See* Fed. R. Civ. P. 72(b)(2). The parties are cautioned that failure to file Objections within this timeframe "will waive the right to appeal." *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011) (quoting *Siers v. Morrash*, 700 F.2d 113, 116 (3d Cir. 1983)). *See also EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (describing standard of appellate review when no timely and specific objections are filed as limited to review for plain error).

DATED this 3rd day of August, 2026.

BY THE COURT:

s/Christopher B. Brown
United States Magistrate Judge

CC: Hon. Christy Criswell Wiegand
United States District Judge

GIOVANNI LEANDRY-MORALES
QP6329
SCI FAYETTE
50 Overlook Drive
LaBelle, PA 15450

All counsel of record, *via ECF*